Mr. Horne, you may proceed. Thank you, Your Honors. May it please the Court and Council. I've got with me today the appellants. I will refrain from saying their name because I still did not pronounce Frank's last name. But I'm also with Casey Dempsey. He's an associate of mine, but I will be arguing today. And thank you for having me this evening. We are here today to challenge the Court's dismissal of the appellant's sex-based discrimination claims and the entry of summary judgment on plaintiff's First Amendment claims for retaliation and suppression of their First Amendment rights to free speech and freedom of association. I think that it's extremely important that this Court reverse what I believe is a very rights to freedom of speech, freedom of association, and equal protection. And the reason why I use the words dangerous, it may seem overdramatic, but the District Court found that quote, self-serving and frankly condescending statements are not protected by the First Amendment. And that if it's self-serving and condescending, from whose point of view it's not certain, you can actually be retaliated against, evicted from public housing, and arrested. As a Court of Aware, appellants are the same-sex couple. They are tenants in public housing that have been heavily involved in the organization, organizing the community, speaking out for the community, and speaking out for themselves. Their participation as officers of the Tenant Council and butting heads with management is protected by the First Amendment. And the record is clear that before- So you're focusing on the First Amendment retaliation claim. I want to just be sure what you're raising before us. Is the, is a due process claim still before us in terms of the loss of the position? Because my understanding is that it was at will, and that would normally not be sufficient predicate for a due process claim. And your opening brief doesn't really seem to contest that. So that seems to not be in front of us. But I just want to confirm that I understand what is and is not in front of us. Your Honor, we are concentrating on the First Amendment. And the under the due process, but under the First Amendment. Because we can see the court's finding as to qualified immunity on due process, but not as to the First Amendment claim. What evidence, counsel, is there that the termination underlying it was retaliatory intent? Your Honor, and there's plenty of evidence on that. One is that he was fired without explanation, without being able to present evidence, without being told I can fire you forever for whatever I want. Sue me. That's what he was told. Four days after that, he received, his husband Jerry, received the letter, so-called letter of concern. Prior to receiving, prior to the termination, there were these emails. One from Frank saying there's a health issue. Management needs to care more about its residents and less about money. This was four days before his termination. Four days after, he receives, his First Amendment. In that letter of concern, he says, your communications with staff have become abusive, offensive, and harassing in nature. As president of the Fillmore Gardens Community Resident Council, you have certain responsibilities to advise and assist the HD in all aspects of public housing. This interaction must be crowded in a professional manner and be representative of all residents. And it also says, rather than attempting to work with city and staff in a collaborative manner to achieve goals, you have become confrontational and accusatory. This is four days after the termination, and then he references- Was this after the meeting where there was some sort of altercation? No, this is long before. This is before that. This is in 2017. So what is the First Amendment activity that occurs before that termination? One is participation in the Resident Council period. They were both involved in the Resident Council. Frank had withdrawn from Resident Council at this point, and there was fighting over money. There was a big fight with Veronica Gritman over funding. They were able to get the money, but there was a fight over it. I thought the theory was that there were specific complaints being made, and that there was a complaint involving an email about a resident who had been incapacitated and wasn't being properly attended to. Do I have this wrong? That's correct, Your Honor, and this is the excerpt of Record at 157. This was for about one week before the termination. Frank emails, and Dina, who was there at the time of termination, is included on the email. Two former Garden residents brought to my attention that they have not seen Clint for days. Upon knocking on his door, I made voice contact with Clint. He said he was okay, and I insisted I need to see his face. After the fire department arrived, I handed over the issue to Jerry, and I The apartment was hot and humid. He continues, I know that Clint is mentally challenged and wants to know if we can do something to prevent a possible personal health issue of our residents as it relates to our maintenance plan that is more focused on the well-being of the residents instead of money. So what evidence did you present on summary judgment that that complaint that you referenced was causally related to the termination? Your Honor, the proximity of time. Dina Fernandez was the one who knocked on his door to take him to the office where he was fired in front of Veronica Gritman and Dina Fernandez, but that's not the only... The termination decision, was it Fernandez or was it Emerson? Well, they were all in the same room, but they were all in the same room, so they all participated in the firing, but I believe it's William Emerson who had, but he's the same person that sent the letter of concern four days later that are complaining of the emails from Jerry days before the firing. So what is it that ties the action of the city vis-a-vis your client's position to his activism? I'm sorry, what is it that ties to... My understanding of your First Amendment complaint or the theory you're proceeding under is that Mr. I would say Chizuski, perhaps I'm wrong about that, had a job that was terminated because he was a community activist who was saying things that the city didn't like. You've cited at length and read the reasoning for their terminations, and I'm trying to ask what did you offer on summary judgment that showed the basis of the decision to terminate was made because of activism? That's important. Oh, Your Honor, it's... Circumstantial evidence is sufficient and... Well, of course it is, but there isn't any, is there? I mean, they said you were obnoxious, and you did this, and you did that. They're not saying we don't like the fact that you're an activist. You can be an activist, but you can't do all these other things, and so we're terminating you from that. Your Honor, which thankfully being obnoxious is protected by the First Amendment as well, and I think that is one of the very important things that the district court missed. Why did they retaliate? What do you have to show that they retaliated for his obnoxiousness? Because they fired him without getting his side of the story, and then additionally, and this is cited by the court, and this is one of those issues that I think no reasonable jury could agree with the court on this. The incident report says there was no crime committed. This was Dean's statement. As to the 1983 issue, the district court found that your client had no property interest in the position and therefore had no ability to formulate an argument that he was entitled to a 1983 claim, correct? Your Honor, I think the court may be referring to the due process claim. Yeah, I think I said that, didn't I? Yeah, we're not arguing due process today. We're arguing first amendment. You're abandoning that? Yeah, we're abandoning the due process. But Dana stated this week, Frank is in charge at his business and another resident is. Dana stated that Frank continually gets involved, tries to take control of the housing unit. That's called being an advocate for your community and organizing and getting what you want from the government, and that is the most important freedom that the first amendment protects, and the court somehow construed this as being okay. The city construed the activities of your client as not being okay because he upset meetings, he didn't permit other voices to be heard. What I want to know is where is your circumstantial evidence of the retaliation? If you can show that, I think you'd have a successful appeal, but I haven't been able to glean very much from reading the record. Your Honor, well, if I may go through some of the evidence some more because this is, I think, one of the mistakes that the district court made. I think we've already been over enough to show the determination to go at least to a jury on whether or not the initial termination violated the first amendment. But we now have the HUD letters that were sent ahead about the smoking policy. Then we get a letter from HUD on July 3rd confirming that the city of Phoenix acknowledged your concern regarding the maintenance issues lack of a full-time manager at the property. The owner reported that since the receipt of your letter, a new one has been hired. We expect that the residents will experience improvements. So they were actually improving the community, forcing Phoenix into compliance, and then they get this lease violation notice that says that it's not to continue in any further profanities, discriminatory, or harassing terms when speaking of others. Now, there is the, there is the... Okay, so they don't like profanity and the types of terms that insult others, and they don't want him to do that. But, yeah, but your Honor... Retaliate against him for his community activism. Well, your Honor, I disagree. I think that... I didn't make a point to disagree or agree with. Of course. I asked you a question. Yes, so your Honor, as to the lease violation notice, and this is in the record at 2 S.E.R. 397, Dena Fernandez testified that she didn't find it harassing. And it's also in the record that he was... Do you have a minute for rebuttal? Yes, Your Honor, I'd like to reserve a minute. Thank you. Okay. All right, so now we'll hear from Ms. Retz. May it please the Court, Christina Retz, on behalf of the City and its employees. I want to talk about the context of this case, which is very important to understanding the rights at issue here. We have a government employee who has been harassed in the past, and we have a government  employee whose speech is not unlimited. We do not have any speech that is protected for the termination issue. We have government subsidized housing that is subject to the regulations of HUD, the CFRs, and also the contractual requirements of the model lease agreement the plaintiffs agreed to be bound by. Why didn't the City simply send a letter saying you're at will employment is terminated? No explanation. Because of the... Why was it necessary to go into this other stuff? The City did terminate for simply the alter... I meant in the letter that said you're terminated. There was such a letter, correct? There was not a letter. It was a verbal termination, and there are two separate issues here that I believe are being conflated. Okay, either in the letter or in the verbal termination, why didn't City employees simply say we're terminating your relationship? The City did say through Mr. Emerson that Frank was being terminated because of the physical altercation. The letter of concern that happened days later was directed to Mr. Bolfrass related to the Tenant Council. Frank was never a member of the Tenant Council at this period of time. In fact, the undisputed evidence... The question is why trigger a First Amendment dispute when the individual is an at-will employee that the City could have just terminated without further comment? Well, it's our position that there wasn't further comment other than he was terminated on that specific date immediately after the altercation with the maintenance man, and that the letter of concern that the plaintiff referenced later had nothing to do with the termination of Frank. It had to do with separate actions that Mr. Bolfrass was taking on behalf of the Tenant Council. The resident assistants who are employed by the City cannot at the same time sit on the Tenant Council because it's seen as a conflict of interest. So although these are two households, they held vastly different responsibilities vis-a-vis the City of Phoenix. So Frank's termination as a resident assistant had no causal connection to his spouse's speech on the Tenant Council and the letters, emails that the court identified as condescending that were sent separately. These two things have been conflated together by the plaintiffs. They're two separate issues. It also submit to the court that the district court correctly found that qualified immunity applies in the context of the termination of Frank because it is based upon the little case in the Ninth Circuit always very context and fact specific when you have a public employee who is terminated. So issue number one is that Mr. Jasiewski was terminated from his position at will, right? Correct. And then issue number two is that the couple were ousted from their rental because of these unsavory, to take a shortcut, comments that both of them were making in the context of their saying. I would say that issue number two is in fact different, is that the eviction process began because of a physical altercation that occurred with Ms. Maggard, unrelated to the prior speech that was addressed in the letter of concern. That during a manager's meeting, not a resident reason he was terminated from his at will position. Correct. Because that happened approximately a year later. So if we look very carefully at the time, you don't have to offer a reason for termination of an at will employee. Correct. Is there a difference between a First Amendment retaliation claim and the claim that I understand the plaintiffs make under state law? The unlawful ouster claim? That those two are separate. They're making the unlawful ouster claim on the basis of the eviction process that happened. And that is not tied at all to the First Amendment retaliation claim on behalf of the termination. I wasn't suggesting, I'm just trying to dig through this. Is there a difference in the legal standards that apply to a First Amendment retaliation claim and the claim that the plaintiffs make under Arizona state law? Yes, under the specific statute, there has to be an ouster for there to be remedies under the state law. Is that clear? I mean, there has to be if you're bringing an unlawful ouster claim under 1367. But this, as I understand it, was a retaliation claim under 1381. And 1381 references the under 1368 incorporates the remedy. So why would proof of ouster be required for a 1381 claim? Because we believe that the Schaeffer case addresses that specifically. And that there is not a, I would also go back to the presumptions, there's not a presumption relating to retaliation. Schaeffer was a 1367 claim though. It wasn't brought under 1381. That's correct. I think that's Judge Collins' point, which is that 1367 wouldn't necessarily, excuse me, 1381, which the plaintiffs proceeded on here, would not necessarily require pleading or showing an ouster. Well, even notwithstanding the ousters to set that apart, you still would have to show some retaliatory conduct unrelated in. Well, but the district court, as I understand it, the only reason the district court gave for rejecting the 1381 claim was that under Schaeffer, you had to show ouster to establish a 1381 claim. So if we find that that was wrong, we don't have anything else to sustain this. It's got to go back. Well, I would say, Your Honor, that there then can't be any damages. What are the remedies? So is it just a statement? Well, but we're not a court of first review. And if the only ground given on a claim is defective legally, it goes back, right? I don't see what else we would do with it. So it really comes down to, does Schaeffer really support the district court's conclusion? And I'm looking at it, and I'm having a hard time getting there, because it's an unlawful ouster claim. And then it references the plaintiff, and Schaeffer was trying to piggyback from the unlawful ouster into retaliation, not the other way around. And then it says, because subsection B, this is 1381, entitles a tenant to the remedies available under the tenant implies that retaliatory conduct is synonymous with unlawful ouster. And therefore, the evidence supports the trial court's finding. We do not agree. Despite the availability of corresponding remedies under the unlawful ouster and retaliatory conduct statutes, they are not equivalent since both provisions prescribe different conduct. So Schaeffer seems to point the other way, that the remedies are the same, but the conduct are different. And the district court took the conduct of one and put it in the other. It seems to be exactly what the opposite of what Schaeffer says. I would go back to the remedies of having, and in fact, maybe it has to go back for the court to make that determination on there being no remedies. We did argue as an independent basis that there wasn't any retaliatory conduct that is in the record. We argued that based upon the undisputed evidence that there was a physical altercation, that just like the First Amendment retaliation claim, there was no evidence to show that the motivating conduct was the speech versus the actual physical assault. And I would tie that into the discussion in Hartman and Nevis, where in both those decisions, the court talks about probable cause to arrest and probable cause to arrest in a retaliatory arrest claim and a retaliatory prosecution claim, barring those two claims because of the public policy underlying the fact that you have an independent body who is making the determination that there is enough evidence to proceed, which then insulates that from the concerns you have about retaliation specifically for speech. I'd like to try to understand what you just said. The plaintiffs properly pled ouster. No question about that, correct? They pled it, but they did not establish it under the facts. Well, I'd go further. They pled it, but they did not establish an unlawful ouster, correct? Okay. Now, as I understand the issue here involving Schaefer, Schaefer would sustain the district court's decision to dismiss count five, I believe it is, or whatever it is, absent the pleading of an ouster. But since it was pled, you have to look at, no, I'm sorry, under 1381, pleading an unlawful ouster, which was not done, sustains the dismissal by the district court. But 1367, which provides for the remedies, says that the lawful, the ouster alone would support a claim, and the court did not analyze that. Is that essentially what you're saying and what we might have to send it back for? Yes, or you can find an independent basis under the court's ruling as it relates to the eviction process itself. It is not unlawful. And I would submit that you can look to the case law specifically under Hartman and Nieves for the finding of probable cause. So if there is a finding of So we have several independent sets of eyes that took a look at this arrest as it related to the Maygard incident. And that was one of the issues of critical importance that the Supreme Court found both in Nieves and Hartman, is that this separates this out. So on that basis, Schaefer or not, the district court properly dismissed the claim. That's your position? Yes, Your Honor. Okay. And I would submit to that for every single one of these claims under the federal law that qualified immunity applies, it is our position that the district court incorrectly defined the law at a high level of generality as it applied to the general First Amendment. Let me go back to that, make sure I understand it. I mean, is it clear that the standard which is, you know, in the context of First Amendment, retaliation claims applies to the Arizona retaliation statute under 1381? It is our argument that it is the same analysis. And that's the analogy from the Arizona appellate courts that says that there is not and there is a dearth of case law in this specific arena under both state and federal law, which represents a very good issue. This claim, this last claim, the Alster claim is sent back to the district court. The district court had this on supplemental jurisdiction, right? Correct. So the district court could decline to continue to accept jurisdiction, matter would go back to state court. Yes, and depending upon this court's cardinous matter, the determinations of this court may have preclusive effect. Okay. Are there any more questions? Just to touch briefly on qualified immunity for the remaining federal claims. For those First Amendment and freedom of association claims, the freedom of association claim is not raised in the brief by the plaintiff at all. We would submit there's waiver as to that claim. They did not address our qualified immunity arguments at all. And the district court defined qualified immunity at too high of a level of generality, saying that it was the right to be free from retaliation from giving up a government benefit. And that is not context or fact specific at all. This court's recent decision in the Moore versus Garland case illustrates that point. For example, the court noted that there was no case law on a retaliatory investigation, which is very similar to a financial audit, which here we don't believe the facts support that either. Thank you. Thank you, counsel. I believe you have some time for rebuttal, Mr. Horne. Thank you, Your Honor. Very briefly, I think I want to stress some importance on the, more importance on the eviction. And the district court got this wrong. But the same day that Frank was arrested, and the same day that they were typing up the eviction notice, is the same day that Frank was introducing the resident counsel to management at the and it was the same day that Jerry was being elected as the sergeant in arms to the resident counsel. And I implore you to strongly look at the body camera footage, because the discussion about not wanting to recognize the resident counsel precedes them pressing charges so that they can get the resident counsel out. Now with regards to, there's no, the audit, Ulrich for City of San Francisco, there is one of the cases that cited in the briefs that it's well recognized that this can be retaliation. And I also strongly implore Your Honors to look at what the factual findings were, because the findings that they were passed is not, it's not supported. The findings that this is somehow a proper investigation is not supported. And lastly, as to the Shafer case, it specifically says, tenant may very well have certain actions and remedies available to her under other sections of the act. However, the evidence does not support Alsterd. And I think our claim is retaliation. They brought these proceedings in retaliation for their First Amendment rights. And Tom, our first co-development we've cited, clarifies that any remedies provided under the act are an addition. So you can't retaliatory evict somebody. And then when they went and say, hey, no harm, no foul, all the stress I put you through, all the mental anguish you had to go through, I'm not responsible for that. That's not the way that it works in the, and that's what they're saying in the Shafer case. I'd let you go over. I think we understand the party's arguments and I appreciate the arguments of both counsel this morning. And the case just argued will be submitted. Thank you, Your Honor. All right. Thank you. And the court will take a 10 minute recess.
judges: HAWKINS, COLLINS, Murphy